UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
In re: BEECH-NUT NUTRITION
COMPANY BABY FOOD LITIGATION

This Document Relates To:

| | |
|---|---|
| 1:21-CV-133; | 1:21-CV-167; |
| 1:21-CV-186; | 1:21-CV-200; |
| 1:21-CV-213; | 1:21-CV-229; |
| 1:21-CV-227; | 1:21-CV-258; |
| 1:21-CV-271; | 1:21-CV-285; |
| 1:21-CV-334; | 1:21-CV-511; |
| 1:21-CV-483; | 1:21-CV-756; |
| 1:21-CV-789; | 1:21-CV-822; |
| 1:21-CV-283; | 1:21-CV-815; |
| 1:21-CV-722; | 1:21-CV-183; |
| 1:21-CV-887; & | 1:22-CV-677 |

ALL ACTIONS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

SILVER GOLUB & TEITELL LLP        STEVEN L. BLOCH, ESQ. IAN
*Attorneys for Plaintiffs*              W. SLOSS, ESQ.
184 Atlantic Street
Stamford, CT 06801

HACKER MURPHY, LLP              JAMES E. HACKER, ESQ.
*Attorneys for Plaintiffs*              RANDOLPH TREECE, ESQ.
28 Second Street, Suite 203          JULIE A. NOCIOLO, ESQ
Troy, NY 12180

SCOTT + SCOTT                        ERIN GREENE COMITE, ESQ.
    ATTORNEYS AT LAW LLP
*Attorneys for Plaintiffs*
156 S. Main St., P.O. Box 192
Colchester, CT 06415

ZIGLER LAW GROUP, LLC            AARON M. ZIGLER, ESQ.
*Attorneys for Plaintiffs*              ROBIN H. SILVERMAN, ESQ.

308 S. Jefferson St, Suite 333
Chicago, IL 60661

WALTON TELKEN, LLC               STEPHEN J TELKEN, ESQ.
*Attorneys for Plaintiffs*        TROY WALTON, ESQ.
241 N. Main Street
Edwardsville, IL 62025

KING & SPALDING LLP              LIVIA M. KISER, ESQ.
*Attorneys for Defendant*         KERI E. BORDERS, ESQ.
110 N. Wacker Drive, Suite 3800   REBECCA B. JOHNSON, ESQ.
Chicago, IL 60606                MICHAEL L. RESCH, ESQ.

BOND, SCHOENECK & KING LLP       SUZANNE M. MESSER, ESQ.
*Attorneys for Defendant*
One Lincoln Center
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

Plaintiffs bring this class action against defendant Beech-Nut Nutrition Company ("Beech-Nut" or "defendant"), a Delaware corporation with its principal place of business located in Amsterdam, New York. It is a manufacturer of baby food. Plaintiffs' seventy-count Consolidated Second Amended Class Action Complaint ("SACC") alleges breaches of warranties, fraudulent misrepresentation, fraud by omission, negligent misrepresentation, unjust enrichment, and deceptive and unlawful business

practices related to the baby food products that defendant markets, distributes, and sells throughout the United States and which plaintiffs allege contains certain toxic heavy metals. Dkt. No. 216. In addition to monetary damages related to defendant's alleged unlawful, unfair, and fraudulent practices, plaintiffs seek to enjoin defendants from selling baby food products until the alleged elevated levels of heavy metals are removed or defendants provide disclosures to consumers regarding the presence of heavy metals on all labels, packaging, advertising, and defendant's website; an order requiring defendant to engage in a corrective advertising campaign and take other steps including but not limited to product recalls; an order requiring defendant to test finished products to ascertain the levels of heavy metals; and to otherwise enjoin defendants from continuing their alleged unlawful practices. *Id*.

On February 2, 2021, plaintiffs filed a class action complaint against Beech-Nut. Dkt. No. 1. The class action complaint was consolidated and first amended on June 24, 2022. Dkt. No. 175. On August 29, 2022, defendant moved to dismiss the Consolidated Class Action Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 8, 9, 12(b)(1), and 12(b)(6). Dkt. No. 189. On January 19, 2023, this Court granted defendant's motion, Dkt. No. 196, finding that the FDA had primary jurisdiction to determine whether the amount of heavy metals in baby food was harmful. Plaintiffs then appealed

the decision of this Court, and the Second Circuit vacated and remanded this decision.[1]  Dkt. Nos. 199, 204–5.

On May 20, 2024, plaintiffs filed their SACC.  Dkt. No. 216.  Defendants now move to dismiss the SACC pursuant to Federal Rules of Civil Procedure ("Rule(s)") 8, 9, 12(b)(1), and 12(b)(6).  Dkt. No. 222.  The motion has been fully briefed, Dkt. Nos. 216, 222, 227, 230, and will be considered on the basis of the parties' submissions and without oral argument.[2]

## II.  **BACKGROUND**[3]

Beech-Nut manufactures, markets, advertises, labels, distributes, and sells baby food products throughout the United States.  SACC ¶ 102.  Plaintiffs purchased Beech-Nut's baby food believing it was suited for its intended purposes, i.e., safe and healthy food to be consumed by their infants

---

[1]  The Second Circuit noted that this Court deferred to the FDA on the basis that the FDA was working on its initiative, *Closer to Zero: Action Plan for Baby Foods* (the "Action Plan").  Dkt. No. 204 at 10.  Under this Action Plaint, the FDA was to finalize action levels for lead and propose action levels for arsenic, with cadmium and mercury considerations to follow.  *Id*.  But since this Court's decision, the FDA abandoned these previously announced timelines and no longer expects to finalize lead action levels by April 2024.  *Id*. at 10–11.  The FDA similarly revised its timelines for issuing guidance on proposed action level for arsenic and cadmium, indicating solely that it expected to reach the interagency review process at some point in 2024.  *Id*. at 11.  Accordingly, the Circuit found that the potential costs from indefinite delays that would arise from deferring to the FDA outweigh any benefits to be obtained from deferring.  *Id*.

[2]  Plaintiffs submitted a letter motion requesting oral argument because of the complex factual background and involved procedural history underpinning this motion.  Dkt. No. 228.  That request is denied.

[3]  The facts herein are taken from plaintiffs consolidated second amended class action complaint as well as any documents attached to it.  For the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

or young children. SACC ¶ 3. But according to Plaintiffs, defendant failed to sufficiently test its products for or disclose the presents of toxic heavy metals. Instead, plaintiffs argue that Beech-Nut misrepresented the safety of its products to the public and continues to market and sell them nationwide despite the inherent dangerous levels of toxic heavy metals contained therein. *See e.g.,* SACC ¶ 131–33.

On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy (the "House Subcommittee") released a report titled "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (the "Report"). SACC ¶ 4. Per the Report, several brands of baby food sold in the United States, including Beech-Nut, contain, or have a material risk of containing, elevated and unsafe levels of heavy metals such as arsenic, lead, cadmium, and mercury. *Id.* ¶¶ 5, 7. Plaintiffs allege high levels of toxic heavy metals can be harmful and dangerous to infants and children.[4] *Id.* ¶¶ 1–2. According to plaintiffs, the Report concluded that

---

[4] Namely, plaintiffs allege that both the United States Food and Drug Administration ("FDA") and the World Health Organization have previously declared toxic heavy metals to have adverse effects on human health and pose a particular threat to infants and children, who are most vulnerable to their neurotoxic and undesirable health effects. SACC ¶ 1. Plaintiffs further allege the developing brains of infants are exceptionally sensitive to injury caused by toxic heavy metals and several developmental processes are shown to be highly vulnerable to the toxicity inherent in such heavy metals. *Id.* ¶ 2.

defendant's internal safety standards were more permissive than both those of its competitors or as promulgated by regulations. *Id*. ¶ 5.

On September 29, 2021, the House Subcommittee released a follow-up report (the "Supplemental Report") entitled "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods." SCACAC ¶ 6. Notably, the Supplemental Report observed that, in June of 2021, public health officials in the State of Alaska conducted tests and observed dangerously high levels of inorganic arsenic in all of Beech-Nuts Rice Cereal products. SACC ¶ 7. Following the Supplemental Report, Beech-Nut recalled certain rice cereal products. *Id*. However, plaintiffs allege the House Subcommittee viewed defendant's recall as incomplete, and that while defendant ultimately exited the rice cereal market because of its inability to produce products that were not harmful, they continue to sell a wide array of baby food products containing toxic heavy metals. SACC ¶¶ 8, 16.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up). Rule 12(b)(1) motions may be

either facial or fact-based.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

Facial Rule 12(b)(1) motions are "based solely on the allegations of the complaint . . . and exhibits attached to it[.]"  *Id*.  To resolve a facial motion, the district court must "determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id*. (cleaned up).  In doing so, the district court "must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Wagner v. Hyra*, 518 F. Supp. 3d 613, 623 (N.D.N.Y. 2021) (quoting *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020)).

By contrast, a defendant who makes a fact-based Rule 12(b)(1) motion submits extrinsic evidence.  *Carter*, 822 F.3d at 57.  If defendant's extrinsic evidence reveals a dispute of fact whether jurisdiction is proper, plaintiff must proffer evidence to controvert defendant's evidence.  *Id*.  To resolve a fact-based motion, the district court must then make findings of fact to determine whether plaintiff has standing to sue.  *Id*.

**B. <u>Rule 12(b)(6)</u>**

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must

be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. <u>DISCUSSION</u>

### A. <u>Article III Standing</u>

Defendant argues that plaintiffs lack Article III standing to bring this action. Def's Mem., Dkt. No. 222-1 at 6–16.[5] Specifically, defendant argues that plaintiffs have failed to plausibly allege that they have suffered a legally cognizable physical or economic injury-in-fact. *Id*. at 6–10.

In opposition, plaintiffs argue that the SACC adequately asserts that they have suffered or will imminently suffer an injury-in-fact. Pls.'s Opp'n, Dkt.

---

[5] Pagination corresponds to CM/ECF.

No. 227 at 7–9.  Specifically, plaintiffs assert that they have suffered an *economic* injury based on allegations that (1) they purchased defendant's products at a premium price and did not receive the benefit of the bargain because they relied on defendants' representations and labeling but received a food that contains or materially risks containing heavy materials, *i.e.*, a worthless product; and (2) defendant's products contain elevated levels of toxic heavy metals rendering the product unsane and less valuable despite representations that assure consumers the products that the product they purchased were safe for their intended purposes and devoid of health risk.[6] *Id*. at 7–12.

Article III § 2 extends judicial powers to federal courts to only hear "cases" and "controversies."[7]  U.S. CONST. art III § 2. "To satisfy the Constitution's 'case-or-controversy requirement,' a plaintiff in federal court 'must establish that they have standing to sue.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  From this, the doctrine of standing has developed "to ensure that federal courts do not exceed their authority as it has been

---

[6]  Namely, plaintiffs point to representations made by defendants that the baby food products including: "organic," "natural," "USDA-Certified Organic," "real food for babies," "nothing artificial added," "non-GMO," and "free from artificial preservatives, colors and flavors."  *See e.g.*, Pls.' Opp'n at 15.

[7]  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id*. (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

traditionally understood." *Id*. at 338.  To satisfy the requirement for standing at the pleading stage, a movant must plausibly allege that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The injury requirement can be satisfied where plaintiffs plausibly allege that they have suffered an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citations omitted).

At issue here is the injury requirement, *i.e.*, defendant argues that plaintiffs' alleged injuries are neither "particularized" nor "actual" as required under Article III.  Def's. Mem. at 2.  Plaintiffs, in turn, argue that they have plausibly alleged an economic injury-in-fact under two theories: (1) the benefit of the bargain theory; and (2) the price premium theory.[8]  Pls.' Opp'n at 13.

## 1. <u>Benefit of the Bargain Theory</u>

First, Plaintiffs allege they suffered an economic injury under the benefit of the bargain theory.  Pls.' Opp'n at 8, 21, 33.  Plaintiffs argue that because

---

[8]  The Court notes plaintiffs have not pleaded to any physical injuries.  As such, the Court will proceed to assess whether plaintiffs have sufficiently alleged an economic injury to satisfy the standing requirements.

the presence of heavy metals in defendant's products renders them unfit for their intended use, *i.e.*, baby foods that is not usable or consumable, thus denying plaintiffs the benefit of the bargain. *Id.*

Under the benefit of the bargain theory, "a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practice & Liability Litigation*, 903 F.3d 278, 283 (3d Cir. 2018). But plaintiffs must identify the representations that induced them to make the purchase. *In re Gerber Prods. Co. Heavy Metals Baby Food Litig. ("Gerber"),* 2022 WL 10197651 at *8 (E.D. Va. Oct. 17, 2022) (quoting *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176 (D.D.C Dec. 31, 2003)) ("Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of [her] bargain and has no basis to recover purchase costs.").

Plaintiffs allege that the levels of heavy metals in defendant's products, even in trace amounts, are unsafe for consumers. Pls' Opp'n at 13. Plaintiffs further allege that because they relied on defendant's misrepresentations regarding these products, they sustained a cognizable economic injury when they purchased a worthless product—thus being deprived of the benefit of the bargain. *Id.* at 12.

Upon review, the Court finds plaintiffs make the same arguments that were reasonably rejected by other courts and finds those cases more analogous to the one presently at issue.

In evaluating the sufficiency of plaintiffs' allegations, theCourt is guided by the reasoning set forth by courts in other circuits related to alleged economic injuries stemming from heavy metals in baby food.[9]  First, in *Plum Baby Food¸* a case involving substantially similarly facts as here, with respect to the benefit of the bargain theory the U.S. District Court for the District of New Jersey held that "[t]o the extent that [p]laintiffs allege that Defendants misrepresented their products, [p]laintiffs have not alleged sufficient facts to support their claims."  637 F. Supp. 3d 210, 224 (D.N.J. Oct. 31, 2022).  In order to "allege economic harm under the benefit-of-the-bargain theory it is required that plaintiffs identify the specific misrepresentation that induced their purchase." *Id.* (citing *Estrada v. Johnson & Johnson*, 2017 WL 2999026, at *9 (D.N.J. Jul. 14, 2017) (holding that "[a]bsent an allegation of adverse health consequences from using Baby Powder, or that Baby Powder failed to perform satisfactorily for its intended use, Plaintiff cannot claim that she was denied the benefit of her bargain.").

---

[9] That is to say, the Court finds itself best guided by a trinity of decisions cited by defendant, each resolved on the basis of standing, by courts in other Circuits regarding a substantially similar nexus of facts to those alleged here.  *See In re Plum Baby Food Litig.* ("*Plum Baby Food*"), 637 F. Supp. 3d 210 (D.N.J. Oct. 31, 2022); *Kimca v. Sprout Foods, Inc.* ("*Sprout Foods*"), 2022 WL 1213488 (D.N.J. April 25, 2022); *Gerber*, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022).

Next, in *Gerber*, the U.S. District Court for the Eastern District of Virginia also rejected plaintiffs' benefit of the bargain argument. 2022 WL 1019651 at *6–8 (E.D. Va. Oct. 17, 2022). First, the district court5 concluded that plaintiffs failed to allege with any specificity that the baby food products were unsafe to them. *Id*. at *7. Next, the district court found that plaintiffs failed to allege that defendant's products failed to provide their children with nourishment or otherwise perform as intended. *Id*. at *8. (internal citations omitted) ("To state a concrete and particularized injury, a plaintiff must do more than allege she did not receive the benefit she *thought* she was obtaining. 'The plaintiff must show that she did not receive a benefit for which she actually *bargained*.'"). Finally, the district court found that plaintiffs paid for safe and healthy food for their children and received the benefit of their bargain. *Id*. (internal citations omitted) ("Accepting the pleadings as alleged, Plaintiffs' only complaint is that the Baby Food Products' levels of Heavy Metals are 'unsatisfactory to [them].' Without more, such an assertion does not amount to a concrete and particularized injury.")

Plaintiffs allege, in a conclusory manner, that the baby foods they purchased contained unsatisfactory levels of heavy metals. But plaintiffs do not say more. Instead, plaintiffs ask the court to infer from these assertions that the alleged presence of heavy metals rendered the food unsafe, unusable, and therefore, worthless.

Plaintiffs allege that they paid for safe and healthy baby food for their children.  But they do not allege that defendant's products were worth something less than this or unusable.  Plaintiffs only allege that defendant branded the products as "organic," "natural," "USDA-Certified Organic," "real food for babies," "nothing artificial added," "non-GMO," and "free from artificial preservatives, colors and flavors," but do not further allege that the alleged contaminants rendered those representations to be false or misleading.  Nor have plaintiffs pleaded that the goods failed to serve their intended purpose.

Therefore, this Court does not find the injury alleged by plaintiffs to be either concrete or particularized, and plaintiffs' benefit of the bargain theory will be rejected as a basis for finding standing.

## 2.  <u>Price Premium Theory</u>

Next, plaintiffs argue they have suffered an economic injury under the price premium theory.  Plaintiffs allege that, had they known of the presence of heavy metals in the products they purchased from defendant, they would not have paid the premium price that they did.  Pls' Opp'n at 8.

A plaintiff plausibly alleges an injury under the price premium theory where they demonstrate that a defendant unlawfully advertised a product as "superior" and, as a result, are unlawfully induced to pay a "premium."  *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practice & Liability*

*Litigation*, 903 F.3d 278, 283 (3d Cir. 2018).  The premium is the dollar amount that the plaintiff was unfairly and unlawfully induced to pay because of defendant's representations.  *Id*.  Further, a plaintiff must identify "comparable, cheaper, or safer products to show that they, in fact, paid a premium."  *Sprout Foods, Inc.*, 2022 WL 1213488 at *8.

In *Plum Baby Foods*, the plaintiffs asserted they suffered an economic injury under this theory when they paid a premium price for baby products manufactured by defendants because the packaging on the products gave plaintiffs the impression of higher quality.  637 F. Supp. 3d 210, 225.  The U.S. District Court for the District of New Jersey held that, because plaintiffs failed to allege any facts to support that defendant's baby food was marketed as superior and failed to identify a cheaper, comparable product to support the notion of a premium price, they failed to allege an economic injury.  *Id*. (citing *Hubert v. Gen. Nutrition Corp.*, 2017 WL 3971912 (W.D. Pa. Sept. 8, 2017) (holding that it was significant that plaintiff failed to allege that Johnson & Johnson advertised baby powder as superior to other products or identify any comparable, cheaper products to show that baby powder was sold at a premium price.").

As stated above, plaintiffs allege that, had they known of the alleged presence of heavy metals in the baby food they purchased, they would not have paid for it.  Defendants argue that plaintiffs have failed to plausibly

allege any increased risk of harm or injury associated with the levels of heavy metals in the goods they purchased and therefore fail to demonstrate that these products are objectively worth less than the price they paid. Def's Mem. at 13. Defendants also argue that plaintiffs cannot establish a price premium because plaintiffs do not identify any *comparable* products that contain the same ingredients as defendant's products without somehow containing the same alleged heavy metals nor any demonstrably cheaper alternatives. *Id*. at 14–15.

Upon review, the Court finds that plaintiffs' complaint has the same deficiencies identified in *Plum Baby Foods, Sprout Foods, Inc.*, and *Gerber*. First, as in *Plum Baby Foods*, plaintiffs fail to allege any facts that this baby food was marketed as superior such that a misrepresentation existed with respect to the existence of heavy metals. Second, as in *Sprout Foods Inc.*, plaintiffs have not alleged any cheaper, comparable products to support the notion of a premium. Instead, plaintiffs express regret about what they paid for a product given an unfavorable report—but they do not state what they

would have done differently had they known to plausibly give rise to the notion they paid a premium.[10]

For these reasons, plaintiffs' price premium argument will be rejected. Accordingly, plaintiff has failed to demonstrate an economic injury-in-fact, and therefore this Court does not find the requisite Article III standing necessary to exercise its authority. Defendant's motion to dismiss the SACC will be granted.

## V.  **CONCLUSION**

Therefore, it is

ORDERED that

1.  Defendant's motion to dismiss plaintiffs' Second Amended Consolidated Complaint (Dkt. No. 222) is GRANTED;

2.  Plaintiffs' Second Amended Consolidated Complaint (Dkt. No. 216) is DISMISSED.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

---

[10] The Court also finds plaintiffs reliance on *John v. Whole Foods Mkt. Grp., Inc.* to be in error. 858 F.3d 732 (2d Cir. 2017). There, the Second Circuit held a plaintiff satisfied the injury-in-fact requirement where plaintiff alleged he was overcharged on at least one occasion in which he purchased pre-packaged cheese and cupcakes. *Id*. The Court held that "general factual allegations of injury . . . may suffice, for on a motion to dismiss we presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. at 737 (quoting *Lujan*, 504 U.S. at 561). But there are key differences between that case and this one. There, there was at least once clear instance of a purchased food product with incorrect labeling  Here, by contrast, it is completely unclear to this court how much, if at all, the labeling on defendant's packaging induced plaintiffs to pay a premium. However, it is clear that plaintiffs have failed to allege a misrepresentation relevant to the presence of toxic heavy metals upon which they relied.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  March 19, 2025
        Utica, New York.